

03/07/2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **HAROLD ARTHUR LONG** | § | Case No. 17-60401 |
| xxx-xx-7333 | § | |
| and **GEORGIA PEARL LONG** | § | |
| xxx-xx-8992 | § | |
| P. O. Box 82, Golden, TX 75444 | § | |
| | § | |
| Debtors | § | Chapter 7 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon its hearing of the Amended Application of McNally & Patrick, LLP as Counsel for Trustee for Allowance of Attorney Fees and Expenses trial of the complaint in the above-referenced adversary proceeding, the Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014.

### *FINDINGS OF FACT*

1. This Chapter 7 case was primarily the product of certain state court litigation pursued by Brandi Bruce and Todd Short (the "Plaintiffs") against Harold A. and Georgia P. Long (the "Debtors").

2. That state court litigation was tried to a jury in the 402nd Judicial District Court in and for Wood County, Texas and resulted in jury findings of trespass issued against both Debtors upon which damages of $450,000 were awarded to Brandi Bruce and $250,000 to Todd Short.

3. The state district court entered a Final Judgment in favor of the Plaintiffs and against the Debtors based upon the jury findings on December 19, 2016. No appeal was prosecuted.

4. After the entry of the judgment, the Plaintiffs sought and obtained the appointment

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

of a receiver in state court. James W. Volberding (the "Receiver") was appointed and he began to pursue fraudulent transfer causes of action under Texas law against the Debtors and their children.

5. Before any of the Receiver's litigation could reach trial or settlement, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on May 26, 2017.

6. The filing of that voluntary petition mandated, pursuant to § 343 of the Bankruptcy Code, that the Receiver identify and surrender to the Trustee all of the property that was now encompassed within the scope of the new bankruptcy estate.

7. Michael J. McNally (the "Trustee") was appointed as the Chapter 7 trustee in the Debtors' Chapter 7 case.

8. The Trustee immediately began efforts to assimilate all that had occurred in the state court litigation and to ascertain the basis and status of the post-judgment litigation initiated by the Receiver.

9. To provide legal assistance for such efforts and all case administration requiring the rendition of legal services, the Trustee sought to retain the services of his law firm, McNally and Patrick, LLP (the "Applicant"), as attorney for the Trustee.

10. The retention of the Applicant as the attorney for the Trustee was approved on July 7, 2017.

11. As an attorney, Mr. McNally has more than 40 years of legal experience and has served as a panel trustee in Chapter 7 bankruptcy cases in this district for almost that entire length of time.

12. Glen Patrick is also a very seasoned bankruptcy attorney with more than 30 years of legal experience and with a significant emphasis on bankruptcy litigation.

13. In addition to a limited degree of legal services rendered in the context of proper bankruptcy case administration, a significant portion of the services rendered by the Applicant pertained to the administration of certain causes of action either initiated by the Receiver or actually discovered by the Trustee.

14. The Applicant was required to assist the Trustee in evaluating whether to continue with certain avoidance litigation that had been initiated by the Receiver in state court.

15. The Applicant was further required to tender services, due to the improper actions of the Plaintiffs, to defend the Estate's control over its assets when the Plaintiffs initiated avoidance litigation in this Court against the Debtors and various third parties, notwithstanding the established proposition that the Estate owned all such causes of action and the right to prosecute them.

16. The Applicant further rendered valuable professional services in fashioning a cost-effective means to obtain value for the Estate through a property sales mechanism that enhanced the receipt of value rather than incurring the costs of litigation to remedy the improper fraudulent transfer of ownership rights to Long & Long Pier Drilling Co., Inc. by the Debtors to their sons and a daughter-in-law.

17. Upon its completion of duties in the administration of the above-referenced bankruptcy estate, including the prosecution and settlement of certain causes of action detailed below, the Applicant filed the Amended Application of McNally & Patrick, L.L.P. as Counsel for Trustee for Allowance of Attorney Fees and Expenses (the "Application") presently before the Court.

18. The Application seeks an award of final compensation of $63,052.50, and reimbursement of expenses in the amount of $542.82.

19. An objection to the granting of the Application was timely filed by the Plaintiffs, who are now the sole creditors entitled to a distribution from this bankruptcy estate after the payment of all approved and allowed administrative expenses.[2]

20. Though properly presented within relevant compensation concerns — such as an "unnecessary duplication of services," a "lack of value," and "excessive charges," — the Plaintiffs' arguments are all based upon the hypothesis that little independent work was required from the Applicant and that, therefore, the compensation to the Applicant should be extremely restricted.

21. The Plaintiffs contend essentially that the Receiver did all the work and that the Trustee "did little more than parrot and copy the work already done by the Receiver."

---

[2] The IRS also filed a timely claim in the case but has since amended its claim to a zero amount. Whether this was really a "two-party" case is not subject to verification at this point. It is uncontested, however, that no motion to dismiss the bankruptcy case on bad faith grounds was prosecuted by any party.

22. Indeed the Plaintiffs suggested at the hearing that, regardless of any evaluation of the services, the Applicant should nonetheless be restricted to the level of compensation awarded by the Estate to the Receiver, or some smaller sum.[3]

23. The Plaintiffs fail to acknowledge the distinctively different role that a bankruptcy trustee plays in a bankruptcy case pursuant to stated statutory duties as opposed to a receiver appointed to pursue the agenda of one particular judgment creditor.

24. The Trustee did not elect to become involved in this case. He was appointed to this case and charged with the fulfillment of certain duties as the sole representative of the Debtors' bankruptcy estate.[4]

25. The fact that the Receiver was prosecuting certain avoidance litigation at the time of the filing of the bankruptcy petition was of obvious assistance to the efforts of the Applicant, but by no means did such assistance encompass all of the duties that were imposed upon the Trustee.

26. Though the probability of success at the time the services were rendered by the Applicant was likely enhanced by the contributions of the Receiver, the Applicant assumed the obligations upon the initiation of the bankruptcy process and began to render services that any reasonable bankruptcy lawyer would have performed in that role.

---

[3] Based upon an agreement in resolution of certain objections, the Receiver was awarded the sum of $29,695.09 from Estate funds [dkt. #59].

[4] As one court cogently observed,

A Chapter 7 trustee's duties are set forth in section 704 of the Bankruptcy Code (and include such things as collecting and liquidating property of the estate) and . . .[t]here are additional duties imposed upon trustees by the United States Trustee's office, pursuant to 28 U.S.C. § 586(a)(3)(A)(i), as well as reporting obligations pursuant to 18 U.S.C. § 3057(a). And, of course, as a matter of common law, a trustee has fiduciary duties to the beneficiaries of the bankruptcy estate beyond his statutory duties — including, primarily, the duties of care, loyalty, and obedience.

*Baron v. Sherman (In re Ondova Ltd. Co.)*, 2017 WL 477776, at *12 (Bankr. N.D. Tex. Feb. 1, 2017) (citing Steven Rhodes, *The Fiduciary and Institutional Obligations of a Chapter 7 Trustee*, 80 Am. Bankr. L.J. 147, 154 (2006) [noting that a bankruptcy trustee's duties of "loyalty, distribution maximization, diligence, due care, accountability, competence, claims review, information disclosure, candor, civility, proper litigation preparation and conduct, impartiality and its appearance, enforcement, supervision, compliance, and good faith and fair dealing."]).

27. The services rendered by the Applicant with regard to the litigation rights owned by the Estate were required because the Trustee had a statutory duty to comprehend and evaluate the causes of action which became property of the bankruptcy estate upon the filing of the voluntary petition.

28. It is always a challenge for any trustee to assume control of pending state court litigation, the prosecution of which has been interrupted by the bankruptcy filing.

29. If, in his judgment, it was prudent for the Estate to pursue those causes of action, then the Trustee could proceed with appropriate steps to intervene in that existing state court litigation initiated by the Receiver and to prosecute those Estate claims there or, alternatively, decide to adjudicate those claims in the more usual forum of the bankruptcy court.

30. Because the avoidance litigation had already been commenced in state court, the Applicant was required to assist the Trustee to evaluate those options and to choose the best forum for the pursuit of those claims if additional action was advisable.

31. After having to set aside a default judgment that had been improperly obtained by the Receiver in that state court action in the post-petition period, the Applicant rendered valuable services in determining that removal of that cause of action to this Court was the most appropriate approach and accomplishing that result.

32. The Plaintiffs complain that excessive, unnecessary services were rendered by the Applicant with regard to the removal process, but it appears that such complaint may be based upon a fundamental misunderstanding of the removal process.

33. Contrary to the contentions of the Plaintiffs, removal is not a mere "form-based pleading" that takes no insight nor analysis.

34. Such a process requires more than a mere "Notice of Removal." In its rules, this Court effectively demands the identification and transmission of all significant documents from the state court file (sans discovery) in order to produce a file that contains all operative pleadings and is capable of providing a comprehensive understanding of the litigation issues which the Court is inheriting.

35. Once the state court litigation had been removed, the services rendered by the Applicant in the prosecution of that adversary proceeding were necessary and beneficial to the Estate and resulted in a settlement advantageous to the Estate from both a legal and financial standpoint.

36. Other than their generic position that the Receiver had already performed all of the legal services needed to provide a recovery on the litigation, thereby rendering the services of the Applicant superfluous, the Plaintiffs also assert various subpoints regarding the services which the Court generally finds to be without merit.

37. The review of prior sworn testimony in the evaluation of inherited litigation is a legitimate service which is necessary to understand the current status of such litigation and the Estate's interests in its continued prosecution.

38. There is no credible evidence that the Applicant engaged in discovery "overkill" or that its actions in preparing the litigation for trial were unnecessary.

39. Though to unfamiliar eyes the amount of time that the Applicant charged for the preparation of the required pre-trial order, including the pre-trial identification and production of anticipated exhibits, might seem excessive, such order is a critical, comprehensive document required by the Court that plays a significant role in finalizing the issues in dispute and outlining the course of trial.

40. The same can be said with regard to the Applicant's compliance with other pretrial requirements of this Court, including the pre-trial presentation of proposed findings of fact and conclusions of law which, by the Court's instruction, must encompass sufficient detail as would be capable of sustaining a judgment.

41. The Applicant is well aware that any failure to meet the Court's expectations in either regard would not be met with tender regret.

42. Though the Trustee acknowledged that the Applicant (and thereby, the Estate) benefited from the pre-petition work of the Receiver, the successful conclusion of each of these litigation assets was dependent upon the services of the Trustee and his counsel.

43. Quite simply, without the successful rendition of services by the Applicant, the Estate would not have enjoyed the litigation recoveries (or its separate recovery of without need of litigation) that it eventually obtained in this case.

44. The Plaintiffs' contention that the Applicant "contributed little to the ultimate and inevitable resolution of the [avoidance] adversary" is not credible and is not supported by the evidence.

45. The Plaintiffs' not-so-implied accusation that many of the working hours listed by the professionals in the Applicant's fee exhibit were fabricated and were not actually incurred is not credible and is not supported by the evidence.

46. Mr. McNally is perhaps the most experienced bankruptcy attorney practicing in this district. His reputation is impeccable. His ethics are beyond reproach. His commitment to public service by his continued participation as a panel trustee in Chapter 7 cases in this district is highly commendable.

47. Mr. Patrick is known to this Court to be a dedicated and skilled litigator, with decades of experience in bankruptcy matters. His reputation for ethical conduct is unimpeachable.

48. To accuse either of them of intentionally wrongful conduct is laughable, but not humorous.

49. The Court can only surmise that it is the Plaintiffs' unique status as the sole distributees of this bankruptcy estate that undergirds their ethical slurs against these professionals by suggesting that the Applicant "seeks to take a substantial portion of the total money for themselves, leaving little for the couple who suffered so much."

50. It is undoubtedly true, as found by the state court jury, that these Plaintiffs have suffered because of their neighbors' wanton behavior. That alone places the Plaintiffs into a sympathetic light and their obvious commitment to hold such neighbors accountable for that behavior have led them into this Court.

51. However, these professionals are not responsible for those circumstances. The Applicant's involvement in this episode was invoked by the filing of a voluntary bankruptcy petition by the Debtors. As such, these circumstances cannot be legitimately used to compel estate professionals to provide services on a discounted scale.

52. For, although professional services rendered in bankruptcy cases are scrutinized for necessity and reasonableness, the "economy of the estate" considerations that existed under the Bankruptcy Act have long since been abandoned and bankruptcy professionals are now statutorily authorized to earn fees comparable to those earned by non-bankruptcy practitioners. *CRG Partners Group, LLC v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655 (5th Cir. 2012) (citing 11 U.S.C.§ 330(a)(3)(F)).

53. The legal services outlined in the Application were performed by the Applicant within a reasonable time.

54. The hourly rates charged by the Applicant for professional services in the Application were reasonable, given the experience and expertise of the professionals involved.

55. The professional services rendered by the Applicant were necessary to the efficient administration of this case and, notwithstanding the role of the Receiver, the Applicant has rendered beneficial legal services which have led this case to a successful conclusion.

56. Though the vast majority of the services rendered by the Applicant in this case were reasonable and necessary, and were likely to have benefited the Estate at the time such services were rendered, there are certain deficiencies in the Application which warrant the disallowance of certain compensation requests.

57. A number of the time entries submitted by the Applicant in its fee exhibit batched or lumped various services together in a singular time entry. A reduction of 5.50 attorney hours is justified because such a presentation effectively precludes the Court from evaluating the reasonableness and necessity of each of the particular services contained in that entry.

58. This Court has previously noted the difficulty in drawing a bright-line rule when an application for legal services by an attorney serving as a Chapter 7 trustee contains services which are legal in nature, but which are closely related to the trustee duties which now are usually compensated through a statutory trustee commission. *See In re Howard Love Pipeline Supply Co.*, 253 B.R. 781, 786 (Bankr. E.D. Tex. 2000).

59. Though the retention of a trustee in a dual capacity as attorney was primarily designed as a means by which to reduce the amount of administrative expenses incurred by a bankruptcy estate, "such dual retention also creates a potential vehicle by which the statutory limitation on trustee compensation might be effectively circumvented, thereby actually increasing the amount of administrative expenses, if the trustee-attorney is permitted to transform what otherwise would be characterized as trustee services into legal services." *Id.* at 787.

60. "The rendition of [a trustee] service is not transposed into a legal service merely because the trustee has a law license." *Id.* at 791-92.

61. "The burden of proof remains upon the trustee-attorney to demonstrate that any service for which attorney compensation is sought cannot be performed practically or lawfully except by an attorney and that the compensation standards of § 330 are satisfied. . . . To the extent that the trustee-attorney fails to demonstrate the necessity of the legal services or the description of such services improperly lumps legal and trustee services together, attorney compensation for those services will be disallowed." *Id*. at 792 (citations and internal quotations omitted).

62. Those issues specifically emerge when the trustee-attorney is assimilating and evaluating information in the early stages of a case, particularly concerning the nature and breadth of pending litigation.

63. Upon close examination, a reduction of 6.70 attorney hours is justified for the billing of attorney time in the Application for services more properly characterized as trustee services, particularly in instances in which multiple professionals are involved.

64. Additionally, a reduction of 3.10 attorney hours (MJM) and 6.60 attorney hours (GP) is justified for excessive time having been billed for the work described.

65. A further reduction of .50 attorney hours is justified for services which improperly or unnecessarily duplicate compensable services performed by another professional retained by the Estate.

66. The Applicant's services pertaining to the creation of the fee application for consideration by the Court were reasonable in light of the size of the application.

67. A total of 22.40 attorney hours are disallowed due to the Applicant's failure to demonstrate by a preponderance of the evidence that such services were reasonable, necessary and/or beneficial to the administration of the case.

68. Based upon the reasonable and necessary services reflected in the Application, the lodestar amount is $54,092.50.

69. No adjustment to the lodestar figure is needed pursuant to the *Johnson* factors.

70. The request for reimbursement of expenses in the amount of $542.82 is allowed.

71. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## *CONCLUSIONS OF LAW*

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and § 157(b)(2)(B).

3. Pursuant to § 330(a)(1), a professional employed by a trustee may be awarded (a) reasonable compensation for actual and necessary services performed by the professional and (b) reimbursement for actual, necessary expenses.

4. The determination of reasonable compensation is derived from a virtual palette of considerations.

5. Issued in cases actually governed by the Bankruptcy Act, the Fifth Circuit distilled a framework for bankruptcy courts to follow in determining what constitutes a reasonable fee.

6. The Fifth Circuit first directed in 1974 that consideration of the twelve fee-shifting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) should be given. *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977).

7. The *Johnson* factors include the following: (1) time and labor required; (2) novelty and difficulty of the legal questions; (3) skill required to properly perform the legal services; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *In re Ahmadi,* 2018 WL 6523094, at *3-4 (Bankr. S.D. Tex. Dec. 10, 2018) (citing *Johnson*, 488 F.2d at 717–19).

8. The Fifth Circuit subsequently supplemented that analysis by confirming that the utilization of the lodestar method for calculating fees in bankruptcy cases was also appropriate. *Lawler v. Teofan (In re Lawler)*, 807 F.2d 1207, 1211 (5th Cir. 1987).

9. The lodestar amount is the product of multiplying the number of reasonably expended hours by the prevailing hourly rate in the community for similar work. *Id.*

10. A bankruptcy court may then adjust that lodestar figure upwards or downwards based upon its consideration of the earlier *Johnson* factors.[5] *Id.*

11. Bankruptcy courts have "considerable discretion" when determining whether a lodestar adjustment is warranted under particular circumstances. *In re Cahill*, 428 F.3d 536, 539-40 (5th Cir. 2005).

12. The framework for determining requests for professional compensation was again modified when § 330 of the Bankruptcy Code was amended in 1994 to provide yet another list of considerations very similar to ones previously utilized.

13. In determining the reasonableness of compensation requests by estate professionals, § 330 of the Code also directs that a court shall "consider the nature, the extent, and the value of such services, taking into account all relevant factors, including —

　　(a)　the time spent on such services;
　　(b)　the rates charges for such services;
　　(c)　whether the services were necessary to the administration of, or beneficial at which the service was rendered toward the completion of, a case under this title;
　　(d)　whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
　　(e)　with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
　　(f)　whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

　11 U.S.C. § 330(a)(3).

---

[5] There are four of the *Johnson* factors, however, that relate to attorney skill and legal complexity and are presumed to be fully reflected in the lodestar calculation: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel, (3) the quality of the representation; and (4) the results obtained from the litigation. Such factors can be used for enhancement only under "rare and exceptional circumstances." *ASARCO, LLC v. Baker Botts, LLP (In re ASARCO, L.L.C.)*, 751 F.3d 291, 295 (5th Cir. 2014).

14. In making such evaluations, the court is statutorily authorized to award compensation that is less than the amount of compensation requested in the Application. 11 U.S.C. § 330(a)(2).

15. Thus, the Circuit has deemed that "the lodestar, Johnson factors, and § 330 coalesced to form the framework that regulates the compensation of professionals employed by the bankruptcy estate." *Pilgrim's Pride,* 690 F.3d at 656.

16. Finally, in a reversal of a prior position, the Fifth Circuit has directed the application of a prospective standard for the award of attorney's fees under § 330 — "one that looks to the necessity or reasonableness of legal services at the time they were rendered." *Barron & Newburger, P.C., v. Tex. Skyline (In re Woerner),* 783 F.3d 266, 276 (5th Cir. 2015).

17. "Under this framework, if a fee applicant establishes that its services were *necessary to the administration* of a bankruptcy case or *reasonably likely to benefit* the bankruptcy estate *at the time at which [they were] rendered*, then the services are compensable." *Id.* (emphasis in original but italics added).

18. "In assessing the likelihood that legal services would benefit the estate, courts adhering to a prospective standard ordinarily consider, among other factors, the probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff, and any potential benefits to the estate (rather than to the individual debtor)." *Id.*

19. However, "litigation in defense of a fee application is not a 'service' within the meaning of § 330(a)(1) . . . [and] bankruptcy courts cannot award attorney's fees for defense of a fee application." *Baker Botts, LLP v. ASARCO, LLC,* ___U.S.___, 135 S.Ct. 2158, 2167-68, 192 L.Ed.2d 208 (2015).

20. The Amended Application of McNally & Patrick, L.L.P. as Counsel for Trustee for Allowance of Attorney Fees and Expenses is granted in part and denied in part and the law firm of McNally & Patrick, LLP is awarded the sum of $54,092.50 as reasonable compensation for actual and necessary services rendered to the Chapter 7 Estate in the above-referenced case, together with reimbursement for actual and necessary expenses in the amount of $542.82, for a total award of $54,635.32.

21. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

22. An appropriate order will be entered consistent with these findings and conclusions.

Signed on 03/07/2019

*[signature: Bill Parker]*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE